The Commonwealth v. The Louisville and Nashville Railroad Company.

CASE 52—ORDINARY.—MAY 30, 1882.

# The Commonwealth v. The Louisville and Nashville Railroad Company.

APPEAL FROM JEFFERSON CIRCUIT COURT.

1. The running of its passenger trains by appellee upon its railroad, transporting passengers, baggage, &c., on the Sabbath day, is not a violation of section 10, article 17, chapter 29, General Statutes.

2. Such use of its trains on that day held to be a "work of necessity."

P. W. HARDIN, ATTORNEY GENERAL, FOR APPELLANT.

No brief.

LYTTLETON COOKE FOR APPELLEE.

1. The running and use of appellee's trains on Sunday is absolutely necessary for the convenience of the community. The "Sunday

The Commonwealth v. The Louisville and Nashville Railroad Company..

Law " never was intended to apply to common carriers. (69 Ind., 61;. 34 Penn., 398; 54 *Ib.*, 401; 24 *Ib.*, 270; 6 Mass., 76; 4 Ohio, 572; 55 Ga., 126; 23 Howard, 219; 24 *Ib.*, 247; Crabb's Rep., 208.)

2. The Kentucky statute now under consideration is in conflict with the third clause of section 8, article 1, of the constitution of the United States. (9 Wheat., 1; 5 Howard, 504; 7 Howard, 283; 91 U. S. Rep., 275; 92 *Ib.*, 259; 95 *Ib.*, 465; *Ib.*, 485; 96 *Ib.*, 1; 94 *Ib.*, 245; 97 *Ib.*, 566; 102 *Ib.*, 691; 103 *Ib.*, 344; Const. Ky., sec. 5, art. 13; Const. U. S., art. 1, sec. 8, par. 3.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

This action was instituted in the name of the Commonwealth against the Louisville and Nashville Railroad Company for an alleged violation of sec. 10, art. 17, chap. 29, of the General Statutes, which provides: " No work or business shall be done on the Sabbath day, except the ordinary household offices, or other work of necessity or charity. If any person, on the Sabbath day, shall himself be found at his own or any other trade or calling, or shall employ his apprentices or other person in labor or other business, whether the same be for profit or amusement, unless such as is permitted above, he shall be fined not less than two nor more than fifty dollars for each offense. Every person or apprentice so employed shall be deemed a separate offense. Persons who are members of a *religious society*, who observe as a Sabbath any other day in the week than Sunday, shall not be liable to the penalty prescribed in this section, if they observe as a Sabbath one day in each seven, as herein provided."

Section 2 of title 1 of the Criminal Code provides: "A public offense, of which the only punishment is a fine, may be prosecuted by a penal action in the name of the Commonwealth of Kentucky, or in the name of an individual or corporation, if the whole fine be given to such individual or corporation. The proceedings in penal actions are regulated

by the Code of Practice in civil actions." Under this pro-·vision of the Code these proceedings were had.

In the first paragraph of the petition it is alleged, in substance, that on the 3d day of April, in the year 1881, it being the Sabbath day, usually known as Sunday, the ·defendant (the railroad company) did run and operate over its railroad track, in the county of Jefferson, a certain train, ·consisting of one locomotive engine, baggage car, and three several passenger coaches. Said train was at the time running and transporting, for the profit of the defendant, pas- ·sengers and their baggage, merchandise, express packages, and the United States mails into the state of Kentucky for sundry points within the state, and through said state into ·other states. That for the purpose of operating said train ·on the day aforesaid the defendant did hire and employ cer-·tain persons to work and labor on the train as engineers, brakemen, and baggage-master (naming them), and for which labor they were paid their wages.

It was further alleged that it was not a work of necessity ·or charity, and that those employed by the company, or either of them, did not observe as a Sabbath any other day in the week than Sunday.

The second paragraph relates to the running, on the same ·day, of cars transporting live stock, goods, and merchandise ·destined for various points in Kentucky, Tennessee, &c.; and by reason of these several violations of the statute, the ·commonwealth claims that the said railroad company became liable to pay fines amounting to $350, viz: one fine of fifty dollars for running and operating the train, and six other fines of fity dollars each for the employment of the · ·persons engaged in the work and labor on the same.

The defendant, in answer to the petition, states that the running and operating its trains was necessary on the day alleged for the public service, and to enable it to discharge its duties and obligations to the public, and to comply with its contract as a carrier for hire, engaged in transporting passengers and the mails of the United States, and in carrying live stock, goods, and merchandise from one point to another in and out of the state. That the hire and employ- ment of the laborers on its trains was then and now neces- sary for the safe and proper conduct of its business as a carrier. That the act in question, if applicable to the defendant, is in violation of the state and federal constitu- tions. An issue was formed, and the cause submitted to the court without the intervention of a jury. Several witnesses testified for the defense to the effect that it was absolutely necessary for railroad companies engaged in transporting passengers, freight, and the mails in and out of the state to run their trains every day, including the Sabbath. That the public convenience and the necessities of trade require that this should be done. That the delays to passengers in traveling from one section of the state to the other, or from the different sections of the country, if this was not done, would prove vexatious and expensive, and sometimes ruin- ous, and that the transportation of live stock, fruits, vege- tables, ice, fish, game, and, in many instances, merchandise, required speedy and rapid delivery in order to preserve it, and protect the rights of those interested in it.

The sole power of determining the policy of such an enactment as is brought in question is vested in the legisla- tive department of the state government by the constitu- tion, and unless the passage of this Sunday law, as it is usually termed, is inhibited by some provision of that

instrument, it must be sustained. The legislative will is supreme on all such questions, and when not abridging the civil rights or privileges of the citizen, must be held to be constitutional. The constitutionality of similar enactments has been passed on and sustained by courts of last resort in nearly every state of the union, and this concurrence of opinion, together with a reference to former decisions of this court on kindred subjects, conclude, in our opinion, the constitutional question raised, and we will discuss the application of the statute alone to the acts of this company, entertaining no doubt as to the constitutionality of the law.

The meaning to be attached to the words "or other *work of necessity*," found in the act, must control the decision of this case, and if we are to attach to those words their scientific or physical meaning, that is, that the action of the company was inevitable or could not have been otherwise, its liability would at once be fixed, as it might have stopped its trains or declined to receive freight or passengers unless upon the agreement that the delay in transportation should relieve it from responsibility. Under such a ruling the cooking of food or the feeding of stock on the Sabbath might be dispensed with, and every other necessity in the way of labor that was not indispensable to man's existence.

Could this have been the legislative intent when using such language in the statute, or shall we not interpret the words as having a legal meaning designed to apply to the wants of the citizen, adapting the language in its construction to the manners, habits, wants, and customs of the people it is to effect; and, in many cases, the rights and duties of those charged with a public or private duty, and the obligations they are under to others must also be considered in determining the character of labor falling within the

statutory prohibition. It is argued in the case of Sparhawk v. The Union Passenger Railway Company, reported in 54 Pennsylvania, that it was not intended by such acts to exempt the party charged from the prohibition of the statute because his labor was a work of necessity to others, but it must be a work of necessity to him who does the labor. We do not so construe the statute. If so, why protect the apothecary who sells his medicines for the relief of the patient, or the dairyman who furnishes the milk for his customers, or the hotel-keeper who furnishes his guests with food and lodging? It is the exigencies of the object to be accomplished that determines, to a great extent, the means to be resorted to for that purpose. No safer rule, we think, can be established, or any better definition given of the word *necessity*, than is found in the decision cited as adverse to the views therein expressed, and that is: "The law regards that as necessary which the common sense of the country, in its ordinary mode of doing business, regards as necessary." The change in the habits and customs of the people, and the mode and character of transportation and travel, makes that a necessity at this day that half a century since would not have been so regarded.

It is impossible, and certainly not practicable, to draw the line of distinction with certainty between works of necessity and such labor as falls within the denunciation of the statute, and we are not disposed to venture so far as to attempt to place a limit to the *meaning* of the word *necessity* when applied to the wants of man. In the case of McGartnett against Wasson, reported in 4th Ohio State, it was held "that works of necessity are not limited to the preservation of life, health, or property from impending danger. The necessity may grow out, or indeed be incident to the gen-

eral course of business, or even be an exigency of a partic-
ular trade or business, and yet be within the exemption of
the act. Hence, the danger of navigation being closed may
make it lawful to load a vessel on Sunday, if there is no
·other time to do so."

In the case of the Phil. & Balt. Railroad Co. against
Steam Tow-boat, reported in 23 Howard, the court said:
"We have shown, ·in our opinion delivered at this term,
that in other Christian countries, where the observance of
Sundays and other holidays is enforced by both church and
state, the sailing of vessels engaged in commerce, and even
their lading and unlading, were classed among the works
of necessity which are excepted from the operation of such
laws. This may be said to be confirmed by the usage of all
nations, so far at least as it concerns commencing a voyage
on that day."

Railroad companies, as carriers of passengers, furnish at
this day almost every accommodation to the traveler that is
to be found in the hotels of the country. His meals, as
well as sleeping apartments, are often furnished him, and to
require the train, when on its line of travel, to delay its
journey that the passenger may go to a hotel to enjoy the
Sabbath, where the same labor is required to be performed
for him as upon the train, or to require him to remain on
the train and there live as he would at the hotel, would cer-
tainly not carry out the purpose of the law, and besides, the
necessity for reaching his home or place of destination must
necessarily exist in so many instances as to make it indis-
pensable that the train should pursue its way. So of the
trains transporting goods, merchandise, live stock, fruits,
vegetables, &c., that, by reason of delay, would work great
injury to parties interested. A private carriage, in which is

the owner or his family, driven by one who is employed by the month or the year to the church in which the owner worships, or to the home of his friend or relative, on the Sabbath, is not in violation of the statute. So in reference to the use of street railroads in towns and cities on the Sabbath day. Those who have not the means of providing their own horses or carriages travel upon street-cars to their place of worship, or to visit their friends and acquaintances; and such is the apparent necessity in all such cases, that no inquiry will be directed as to the business or destination of the traveler, whether in the one case or the other, nor will an inquiry be directed as to the character of the freight being transported ; nor will the person desiring to hire the horse from the livery stable be compelled to disclose the purpose in view in order to protect the keeper from the penalty of the law. Such employments are necessary, and not within the inhibition of the statute.

The common sense, as well as the moral sentiment of the country, will suggest that the merchant who sells his goods, or the farmer who follows his plow, or the carpenter who labors upon the building, or the saloon-keeper who sells his liquors on Sunday, are each and all violating the law by which it is made penal to follow the ordinary avocations of life on Sunday. The ordinary usages and customs of the country teach us that to pursue such employments on the Sabbath is wrong. Every man can realize the distinction between pursuing such avocations and that of transporting the traveler to his home, or the pursuit of such employments as must result from the necessary practical wants of trade.

This statute is only a civil regulation enacted from motives of public policy, and to discuss it in a religious point of

view would be to attribute to the legislature the exercise of a power it does not possess: that is, the power to enforce the performance of religious duties.

Judgment affirmed, Judge HARGIS dissenting.

JUDGE HARGIS DELIVERED THE FOLLOWING DISSENTING OPINION:

The statute forbids any person, artificial or natural, from engaging in the ordinary business, trades, or callings of life on the Sabbath day, and none are exempted out of its provisions except members of certain religious societies.

And while entertaining great respect for the views of the majority of this court, I am constrained to dissent from their opinion in this case, because I do not believe that the work or business of a railroad is either a necessity or charity in the sense of the statute, or that the legislature thought so when it enacted the law.

If the legislature had deemed it proper, it would have exempted railroads from the terms of the statute, but it did not do so, and for this court to interpolate by construction exceptions not contained in the statute, or to determine that the words "necessity or charity" embrace the ordinary work, business, trade, or calling of any person, artificial or natural, is to violate in the boldest form, and with the least legal excuse for it, the rule which forbids "judicial legislation," and which is absolutely necessary to the preservation of the legitimate functions of the legislative department of the government.

I therefore respectfully dissent from the construction put upon the statute by a majority of the court.