## Phoenix Hotel Company v. Commonwealth.

(Decided May 1, 1913.)

### Appeal from Fayette Circuit Court.

1. Appeal—Jurisdiction.—An appeal lies from a fine exceeding $50 although recovered in a penal action.

2. Appeal—Separate Offenses—When Commonwealth Cannot Object to Its Own Petition.—The Commonwealth having filed a penal action setting out in different paragraphs separate offenses, cannot on appeal object to the form of its own petition.

3. Quail—When Not Unlawful to Have in Possession—Caught or Killed Outside of This State.—It is not unlawful under Section 1944 Ky. Stat., to have quail in possession during the closed season if they were not caught or killed in this State.

4. Quail.—No one may lawfully offer for sale quail caught or killed in this State at any time.

5. Quail—One May Not Offer For Sale in Closed Season Though Caught or Killed in Another State.—No one under Section 1951 Ky. Stat., may lawfully offer for sale or sell during the closed season quail though it was caught or killed in another State.

GEO. C. WEBB and SHELBY & SHELBY for appellant.

D. GRAY FALCONER, CHESTER D. ADAMS, JAMES GARNETT, Attorney General and D. O. MYATT, Assistant Attorney General for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

This is a penal action instituted by the Commonwealth against the Phoenix Hotel Company, a corporation, of Lexington, Kentucky, it being charged in the petition that the defendant in violation of section 1944 Ky. Stat., had in its possession three quail between the first of January and the fifteenth of November, in the year 1912, there being three paragraphs to the petition, and a judgment being prayed in each paragraph for the sum of $25. The defendant by its answer alleged that it did have in its possession the quail referred to, but that they were not caught or killed in the State of Kentucky, but were purchased from a wholesale dealer in the city of Chicago, who in turn had purchased them in the open market in the city of Baltimore, Maryland. The circuit court sustained a demurrer to the answer, and gave judgment against the defendant in the sum of $75. The defendant appeals.

A motion has been entered to dismiss the appeal on the ground that the court has no jurisdiction. Section 11 of the Criminal Code of Practice provides:

"The proceedings in penal actions are regulated by the Code of Practice in civil actions."

By section 950 Ky. Stat., no appeal shall be taken to this court in a civil action from a judgment for the recovery of money if the value in controversy is less than $200. It is insisted that as the judgment here was for only $75, no appeal lies. But section 347 of the Criminal Code is as follows:

"The Court of Appeals shall have appellate jurisdiction in penal actions and prosecutions for misdemeanors, in the following cases, only viz: If the judgment be for a fine exceeding fifty dollars, or for imprisonment exceeding thirty days; or, if the judgment be for the defendant, in cases in which a fine exceeding fifty dollars, or confinement exceeding thirty days, might have been inflicted."

It will be observed that by this section the court is given jurisdiction in penal actions if the judgment is for a fine exceeding $50, and as the fine here is $75, the court has jurisdiction.

It is also insisted that it was improper to join three charges in one action in different paragraphs. But the Commonwealth brought the action; the defendant made no objection to the form of the petition, and a judgment having been rendered in favor of the Commonwealth as prayed, it cannot now be heard to object to the form of its own action. The court has in a number of cases taken jurisdiction under similar circumstances. (Com. v. L. & N. R. R. Co., 80 Ky., 293, L. & N. R. R. Co. v. Com., 92 Ky., 114, Stratman v. Com., 137 Ky., 500).

This brings us to the merits of the controversy. The question to be determined is may one lawfully have in possession between January first and November the fifteenth in this State quail that have been killed in another State. The question turns on the proper construction of our statutes.

By an act approved February 27, 1894, entitled "An act to protect game and small birds," it is provided as follows: (Acts 1894, p. 40-41)

"1. It shall be unlawful for any person within this State to catch, kill or pursue with such intent, any buck, deer or fawn, or have the same in possession after it has been caught or killed, between the first day of March

and the first day of September in each year. (Ky. Stat., 1939).

"2. No person shall catch, kill or pursue with such intent, or have the same in possession after it has been caught or killed, any black, grey or fox squirrel, between the first day of February and the fifteenth day of June in each year: Provided, grey squirrels may be killed for protection of crops. (Sec. 1940).

"3. No person shall catch or kill, or pursue with such intent or have the same in possession after it has been caught or killed, any wild goose, wood-duck, teal or other wild duck, between the first day of April and the fifteenth day of August in each year. (Sec. 1941).

"4. No person shall catch, kill or pursue with such intent, or have the same in possession after it has been caught or killed, any wild turkey, between the first day of February and the first day of September in each year. (Section 1942).

"5. No person shall catch, kill or pursue with such intent, or have the same in their possession after it has been caught or killed, any woodcock, between the first day of February and the twentieth day of June in each year. (Sec. 1943).

"6. No person shall catch, kill or pursue with such intent, or have the same in possession after it has been caught or killed, any quail, partridge or pheasant between the first day of January and the fifteenth day of November in each year." (Sec. 1944).

The seventh section makes a similar provision as to doves; the eighth as to other smaller birds; the tenth as to the nests or eggs of wild birds. The eleventh section provides the penalty for the violation of the act. The ninth, twelfth and thirteenth sections are as follows:

"9. No person shall at any time catch, kill or take by means of net, trap, box or snare, or have in possession after having been so caught, killed or taken, any quail, partridge or pheasant. (Sec. 1947).

"12. The possession of any of the animals or birds intended to be protected by this law within the periods for which their killing or pursuit is hereby prohibited shall be *prima facie* evidence that the said animal or bird was unlawfully caught or killed, and the possession thereof unlawful. (Sec. 1950).

"13. Any person exposing for sale any of the animals or birds intended to be protected by this law within

the periods for which the taking or killing thereof is hereby prohibited shall, for each animal or bird so exposed for sale, be subject to the same penalty as herein provided for the unlawful killing or taking of such animal or bird." (Sec. 1951).

The sections of the act above quoted are taken bodily from an act approved March 11, 1876, entitled "An act to protect game and small birds and to punish trespass." (See Acts 1876, page 55). By an act approved March 24, 1904, entitled, "An act prohibiting the sale or transportation of wild turkeys, pheasants, grouse, partridge or quail within the State of Kentucky," it is provided as follows:

"1.   That it shall be unlawful in the State of Kentucky, at any time, to buy, sell, expose for sale, offer for sale, or have in possession for the purpose of bartering or selling any wild turkeys, pheasants, grouse, partridge or quail, which have been killed within this State.

"2.   That it shall be unlawful for any person, corporation or common carrier to receive for transportation, or to transport, or cause to be transported, or to have in possession with the intent to transport, or to secure the transportation of, within or without this State, any of the birds or fowls mentioned in section one of this act, which have been killed within this State." (See Acts 1904, page 262; Ky. Stats., sections 1939-1951).

It is manifest that the meaning of the first six sections of the act of 1894 is the same; for they are each couched practically in the same language; that is, the rule as to deer, squirrels, wild geese or wild ducks, wild turkeys and quail are the same. The natural meaning of the first section is that it shall be unlawful within this State to catch or kill any deer or have the deer in possession after it has been so caught or killed, between the first day of March and the first day of September in each year. The words "the same" would indicate that the Legislature had in mind a possession of the thing which it had forbidden should be caught or killed, the act of 1894 following literally the language of the act of 1876 must be regarded as not intended to change the rule under that act and so many counties of the State were excepted out of the operation of that act, it is hard to believe these sections were intended to include any game except that in the counties to which it applied. The act not only included larger game, but it protected all manner of small birds; and it can hardly be credited that the Legislature

in 1876 had in mind making it unlawful to bring to certain counties of the State these birds after they were caught in other States. The 9th section also adds force to this construction. It provides that no person shall at any time catch any quail in a trap or snare or have in possession after having been so caught, any quail. The word "so" would clearly limit the application of this section to quail that were caught or taken in this State, and we think the words "the same" that are used in the other sections were used for the same purpose. The 12th section provides that the possession of any of the animals or birds intended to be protected by the law within the periods for which their killing or pursuit is prohibited, shall be *prima facie* evidence that the said animal or bird was unlawfully caught or killed and the possession thereof unlawful. In providing that the possession of the animals and birds during the closed season should be *prima facie* evidence that they were killed unlawfully, the Legislature must have had in mind animals and birds killed in this State; for the killing of no others is unlawful. In Com. v. Chase Davidson Co., 109 Ky., 236, it was held that any person exposing for sale any of the animals or birds intended to be protected within the period for which the killing of them is prohibited, was punishable under the 13th section; although the birds were killed before the close of the season. The court said:

"We assent to the proposition that, as to section 1950, proof may be introduced to show that the birds in possession were caught or killed in the open season, and that, if they were caught or killed in the open season, the possession of the birds is not prohibited. But as to the sale or offering for sale during the closed season (i. e., between January 1 and November 15), a different section is provided, and the rule of evidence is not the same. This section (1951) prohibits the sale of birds within the closed season, without regard to when or where they were killed. As to the proposed sale, there is no *prima facie* case to be rebutted, but the plain statute is that the birds shall not be exposed for sale within the prohibited periods. That they may be lawfully kept in possession under section 1950, having been killed in the open season, is no reason why they may be sold in violation of section 1951. The reason for this difference in the two sections is manifest. The Legislators may have been willing to permit a person to kill and store for his own use all the birds he desired during the open season,

or may have been willing for any person to purchase and store for his own use birds killed in open season, yet were not willing to permit a wholesale slaughter of birds during the open season, and their storage and sale at any season. To prohibit the sale except in the open season would to a very large extent prevent the destruction of those birds and animals which the law intended to protect. If the intention of the statute was to protect the birds and animals of the country, it seems to us that section 1951, which appellees have violated, is most potent for good.''

We adhere to the construction of the statute announced in that case. The 12th section of the act was intended for the better enforcement of the preceding sections, but the 13th section was intended to make unlawful the sale or exposing for sale of any of the animals or birds named in the preceding sections within the closed periods above prescribed. Game is migratory; the wild geese and wild ducks which appear here at certain seasons are in the south in winter and in the north in summer. Deer and squirrels also move about, although not to the same extent as wild geese or ducks. The robins that are here in the spring, winter in the south, and frequently nest in the far north. The purpose of the 13th section was to protect these birds and animals by preventing their sale during the closed season, no matter where or when killed. The act of March 24, 1904, makes it unlawful at any time to buy, sell or expose for sale or have in possession for the purpose of sale certain birds which have been killed within this State. The purpose of this section was to prevent the sale of those birds at any time if killed in the State. It was not intended to modify the prohibition expressed in Section 13 of the act of 1894. That section only applies during the closed season. The act of 1904 applies at any time, but only to birds which have been killed within the State. Summing up the matter, we conclude as follows: (1) It is not unlawful under section 6 of the act of 1894 (section 1944 Ky. St.) to have in possession quail during the closed season, unless the quail was caught or killed in this State. (2) It is unlawful to expose for sale under section 13 of the act of 1894 (section 1951 Ky. Stat.), any quail within the closed period whether killed within or without the State. (3) It is unlawful at any time to buy, sell or expose for sale, offer for sale, or have in possession for the purpose of sale, any quail which have been killed within this State.

The result of the two sections when read together is that quail killed within the State may not be lawfully sold or offered for sale at any time and that quail killed without the State may be lawfully offered for sale only during the open season. (4) These restrictions are within the power of the Legislature in protecting the game of the Commonwealth.

While the decisions in other States are not harmonious because of differences in the language of the statute construed, the principles we have stated are sustained in the following cases: Com. v. Wilkerson, 21 Atl., 15; Com. v. Hall, 128 Mass., 410; Ex parte Maier, 103 Cal., 476; 42 Am. St. R., 129; State v. Shattuch, 96 Minn., 45; Roth v. State, 51 Ohio, 209, 46 Am. St. R., 566; Allen v. State, 74 S. E., 707-8; State v. Pulos, 129 Pac., 129; Whitehead v. Smithers, 2 C. P. D., 553.

As the petition simply charged the defendant with having three quail in its possession during the closed season, and the answer showed that these quail were not killed in the State of Kentucky, the circuit court erred in sustaining the demurrer to the answer.

Judgment reversed and cause remanded for further proceedings consistent herewith.