## McAfee v. Commonwealth.

(Decided January 9, 1917.)

### Appeal from Mercer Circuit Court.

1. Sunday—Doing Business On In Violation of Law.—The keeping open of a place of business on Sunday at which soda water, soft drinks, coca cola, cigars and tobacco, sandwiches, various kinds of canned goods, cheese and crackers, fruits and candies are sold, is doing business on Sunday in violation of section 1321 of the Kentucky Statutes.

2. Sunday—Violation of Sunday Statute—When Question One of Law or Fact.—When there is no room for difference of opinion as to whether the doing of the work or business complained of was a work of necessity, the question whether the Sunday statute has been violated is one of law for the court; but if there is room for reasonable difference of opinion as to whether the work or labor engaged in was necessary, it is a question of fact to be determined by the circumstances of the particular case.

3. Sunday—What Are Works of Necessity Within Meaning of Statute.—The keeping open for business of a hotel, boarding house or restaurant on Sunday for the exclusive purpose of furnishing food for the public is a work of necessity within the meaning of the Sunday statute providing that "no work or business shall be done on the Sabbath day except the ordinary household offices or other work of necessity."

4. Sunday—Works of Necessity—What Are.—The necessity that will excuse engaging in work or business on Sunday need not be a physical necessity or an imperative or overpowering necessity. It need only be a reasonable necessity and one that is created by some real or unexpected emergency or uncommon or extraordinary condition. It must be something that not to do would work a hardship, or loss, or unusual discomfort, or inconvenience either to the individual who does the thing complained of or to the person or persons for whom he does it.

5. Sunday—Necessary Work or Business—Test of.—It is not possible to set down with reasonable accuracy the line that separates works of necessity from works that are not, and so the best rule that can be laid down is to regard that as a work or business of necessity which the common sense and sound morality of the community would regard as necessary to be done, and this is to be determined in cases of doubt by the facts and circumstances of each particular case.

6. Sunday—Changing Social and Business Conditions—Effect of.— The changing conditions, customs, manners and habits of the people will not be allowed to alter the meaning or impair the efficiency of the Sunday law. In all cases a necessity must exist to excuse the doing of work or business on Sunday. The statute as it reads must be applied to these new conditions and the work or business

subjected to the never changing test of necessity, judged by the facts and circumstances of the case under investigation.

7. Sunday—Work of Necessity—Keeping Open a Grocery or Confectionery Store.—What particular articles the owner of a grocery or confectionery store may sell on Sunday and be excused on the ground of necessity must be determined by the facts and circumstances surrounding the particular transaction.

E. H. GAITHER for appellant.

M. M. LOGAN, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant was indicted for doing work or business on Sunday in violation of section 1321 of the Kentucky Statutes, reading: "No work or business shall be done on the Sabbath day, except the ordinary household offices, or other work of necessity or charity, or work required in the maintenance or operation of a ferry, skiff or steamboat, or steam or street railroad. If any person on the Sabbath day shall himself be found at his own, or at any other trade or calling, or shall employ his apprentices, or other person, in labor or other business, whether the same be for profit or amusement, unless such as is permitted above, he. shall be fined not less than two nor more than fifty dollars for each offense. Every person or apprentice so employed shall be deemed a separate offense. Persons who are members of a religious society, who observe as a Sabbath any other day in the week than Sunday, shall not be liable to the penalty prescribed in this section, if they observe as a Sabbath one day in each seven, as herein provided."

The indictment charged that McAfee did "unlawfully and wilfully, on Sunday, October 16th, have open for business, the same being the Sabbath day, and engaged in work and business at his soda fountain and confectionery and store in Salvisa, and then and there engage in the barter and sale of merchandise and soda water and soft drinks, and sold candy, which was not a necessity, to Aubrey Kennedy for pay, and was engaged at his trade and calling and labor and business for profit, and on said date kept open said place for business and engaged in work as aforesaid, and said operation of said soda fountain and keeping open of said

confectionery and store and the sale of merchandise and soda water and soft drinks and candy therein, was not a work of necessity or charity or required in the maintenance of a ferry, skiff or steamboat or steam street railway, and said Gilbert McAfee was not then and there a member of a religious society who observed as a Sabbath day any other day in the week than Sunday.''

The case was submitted to the court under an agreed statement of facts, which showed that ''McAfee has a pool room and refreshment stand, selling soda water, soft drinks, coca cola, cigars and tobacco, also sandwiches and various kinds of canned goods, cheese and crackers, fruits and candies, located in Mercer county, Kentucky.

''The pool room is separate from the refreshment room by a partition and is not opened on Sunday.

''On Sundays the defendant sells to those who request it, soda water, soft drinks, cigars, candies, tobaccos, ice cream, sandwiches, and other things above mentioned and the defendant made the sale charged in the indictment.

''Salvisa, where said business is conducted, is a place of about three hundred inhabitants, and there is no restaurant in the town, but there is a boarding house serving meals at regular hours.

''The defendant and one servant were employed in said business at the time charged in the indictment.

''Defendant is not a member of any religious society observing any day other than Sunday as the Sabbath.''

Under the indictment and on this agreed statement of facts the court imposed a fine of one hundred dollars, and McAfee appeals, insisting that on the agreed state of facts there should have been a judgment of acquittal.

The offense of which McAfee was found guilty was not that of selling candy to Kennedy on Sunday, but that of engaging on the Sabbath day in his trade or calling, which was, as appears from the indictment as well as the agreed facts, the keeping of a place of business in the village of Salvisa at which he sold on Sunday and other days ''soda water, soft drinks, coca cola, cigars and tobacco, also sandwiches and various kinds of canned goods, cheese and crackers, fruits and candies.'' Therefore, the guilt or innocence of McAfee is not to be determined by the circumstance that he sold

Kennedy candy, but that by the general character of work or business in which he was engaged on the Sabbath day.

On the facts agreed to it is the contention of his counsel that McAfee, when the articles that he kept for sale and sold are considered as a whole, really conducted nothing more than a restaurant at which persons who might want a meal or lunch could get it, and, therefore, the work or business in which he was engaged on Sunday was, in the meaning of the statute, a work of necessity under the rule laid down in Commonwealth v. London, et al., 149 Ky. 372, and so he should have been acquitted. In that case the indictment charged that London and his partner were engaged "in conducting a general confectionery business in Danville, Ky., and in the sale of candy, some fruits, chocolate, ice creams, pies, bread and butter sandwiches, coffee and soda water, and they were so engaged at the time and times of the violations of the law hereinafter complained of." And the court, after holding that, under the facts stated in the indictment, to which a demurrer was sustained, the question whether London and his partner had violated the Sunday statute was a question of law, reached the conclusion that they were only conducting a restaurant or eating place, and said:

"The only question left for determination is: Did the lower court properly conclude that appellees had a right to keep their place of business open and sell bread, butter, sandwiches, chocolate and coffee? In disposing of these articles, appellees were doing the business of a restaurant keeper; they are charged in the petition, however, with keeping a confectionery, but the petition also specifically names the articles which they sold and which we think, for all intents and purposes, would class them as restaurant keepers. The public, especially the traveling public, of necessity has to obtain something to eat on the Sabbath, and appellees had as much right to keep their house open and furnish the articles named to the public as did any hotel or other place in Danville."

After assuming, as the court did, that London and his partner, under the facts stated in the indictment, were engaged in the business of keeping a restaurant, the decision that they were not guilty of violating the Sunday statute was undoubtedly correct, as it has al-

ways been the settled rule in the construction of Sunday statutes that the keeping open on the Sabbath day of hotels, boarding-houses and restaurants for the accommodation of the public is a work of necessity; and so the proprietor of such an establishment is exempt from the operation of the statute when the business in which he is engaged is confined exclusively to furnishing food for the public. 37 Cyc. 553; 27 A. & E. Ency. of Law, 400.

The reasons why persons who are engaged exclusively in conducting hotels, boarding-houses and restaurants at which the public may obtain food on Sunday, are exempt from the operation of the statute when their work or business is confined to the furnishing of food, are so obvious that it is not necessary to extend this opinion in setting them out, but we do not think that McAfee was engaged in the exclusive business of keeping a restaurant or in the exclusive business of furnishing meals or food for the accommodation of the public. On the contrary, we think his business was that of a small grocer or confectioner, engaged in the business of keeping a store at which any person who wanted to buy tobacco, cigars, canned goods or any of the articles mentioned in the agreed facts could obtain them on Sunday as well as on other days. It may be conceded that a person who was hungry might get from McAfee cheese or crackers or a can of oysters or sardines, and so he might get these at any ordinary grocery establishment where such articles are usually sold in connection with other things kept in such a store.

If McAfee can claim immunity from the operation of the Sunday law on the ground of necessity, it would follow that any persons who kept for sale articles of prepared food, such as cheese, crackers and canned goods in connection with other articles usually had for sale in grocery or confectionery stores, could keep their places of business open on Sunday and conduct their business on that day in the same manner that they did on other days of the week.

It is also manifest that if this useful and beneficent statute is to accomplish the purpose of its enactment, it can not be so construed. Such a construction would entirely defeat as to a large class of people the object of the statute, which should be given a reasonable construction and one that will carry out the legislative in-

tent in its adoption. And this intent was to compel observance of the Sabbath day by all persons without reference to the trade, business or occupation they engaged in and to forbid the doing of any work or business on that day except the ordinary household offices or other work of necessity or charity, unless the work was one of the employments specifically excepted in the statute.

Statutes like this are in force in every State, and the only difficulty that has come about in their construction or enforcement in respect to the particular matter now being considered grows out of differences of opinion as to what constitutes works of necessity. All the courts are agreed that the statute is constitutional and that it should be liberally construed so as to effectuate its purposes; but there is oftentimes no little perplexity in determining whether the particular act under investigation was or not a work of necessity, and this has induced the courts generally, when there is reasonable doubt as to whether the work was or not one of necessity, to treat the question as one of fact and determine it according to the facts of the particular case, and this we think is manifestly the correct rule to be adopted in cases of doubt: L. & N. R. R. Co. v. Commonwealth, 92 Ky. 114; Commonwealth v. C. & O. Ry. Co., 128 Ky. 542; Gray v. Commonwealth, 171 Ky. 269.

In the London case, however, the question was held to be one of law, but this was because the court in that case came to the conclusion that the facts stated in the indictment were of such a nature as to leave no room for doubt that London was engaged in a work of necessity. It is true the court in the London case said: "And we are asked to hold on the facts stated that appellees, as a matter of law, are guilty of a violation of the statute. The construction of a statute is a matter for the courts—a matter of law. The construction of this statute depends upon the meaning given to the vital word "necessity," as used in the statute. The petition having set out specifically what appellees did on the Sabbath day in question, it was for the court, on demurrer, to say whether or not those things were denounced by the statute, construing it according to the common sense of the country." But this expression must of course be read in connection with the context, and when so read it is plain that the court meant when there was no room

for honest difference of opinion as to the effect of the facts, the question whether the statute had been violated was one purely of law.

It is also well settled by the current authority that the necessity that will excuse engaging in work or business on the Sabbath day need not be a physical necessity or an imperative or overpowering necessity. It need be only a reasonable necessity and one that is created by some real or unexpected emergency or uncommon or extraordinary condition. The fact that the failure to do something may cause interruption or delay in the ordinary course of business, or some discomfort or inconvenience to the individual affected or the public, will not make the doing of the thing a work of necessity. It must be something that not to do would work severe hardship or loss or unusual discomfort or inconvenience either to the individual who does the thing complained of or to the person or persons for whom he does it. Commonwealth v. White, 190 Mass. 578, 5 L. R. A. (N. S.) 320; Quarles v. State, 55 Ark. 10, 14 L. R. A. 192; Western Union Telegraph Co. v. Yopst, 118 Ind. 248, 3 L. R. A. 324; State v. James, 81 S. C. 197, 16 Ann. Cases 277; City of Gulfport v. Stratakos, 90 Miss. 486, 13 Ann. Cases 855; Burns v. Moore, 76 Ala. 339, 52 Am. Rep. 431; Pate v. Wright, 30 Ind. 476, 95 Am. Dec. 705.

It is also true that conditions and emergencies are continually arising that make it necessary to engage in work or business on Sunday either for the benefit of the person actually engaged in the work or business or for the benefit of some other person affected by the condition or emergency. And so the question as to whether a particular work or business that is engaged in on Sunday is or is not a work of necessity, is inevitably in many cases a matter of such doubt that it would not be possible for the courts to lay down with reasonable fairness and accuracy the line that separates works of necessity from works that are not necessary. The condition then being one that makes it impracticable for the courts to establish any fixed standard of right or wrong, the best rule that can be laid down, as said in Commonwealth v. L. & N. R. R. Co., 80 Ky. 291, is to regard that as a work or business of necessity which the common sense and sound morality of the community would regard as necessary, and this to be determined in cases of doubt by the facts and circumstances of each particular case.

Measured by these general rules, it is perfectly plain that the business in which McAfee was engaged was not a work of necessity. There is no showing in the record, nor could there well be, according to any reasonable judgment, that it was necessary that McAfee, to save himself from serious or unexpected loss, or the public from unusual discomfort or inconvenience, should keep his store open on Sunday and offer for sale the articles he had in stock.

It is, however, pressed on our attention that as McAfee kept for sale articles of prepared food, such as sandwiches, cheese and the like, and the poor man is as much entitled to sandwiches or cheese as the rich man is to chops, steak, eggs or other expensive articles of food, no distinction can in reason be made between the small and obscure place for the convenience of the poor, and the large, pretentious place for the convenience of the rich, or the village restaurant and the city cafe, and, therefore, he should have the right to conduct his business on Sunday.

It is of course true that no distinction should be made between the city and the village restaurant or eating house. One has precisely the same standing under this statute as the other, and the conducting of each is regarded as a work of necessity; but the fault in the argument of counsel lies in its inapplicability to the facts of the case, because McAfee was not conducting an eating house or restaurant for the convenience of the poor or the rich or the public who might want a meal or something to eat. His establishment was simply a small grocery or confectionery, such as may be seen in almost every town or village in the State. It was not kept open on Sunday to furnish food for the hungry public, but purely as a matter of business for profit to the owner. It was conducted precisely on Sunday as it was on Monday and other week-days, and so on Sunday, McAfee followed his usual trade or calling. Plainly the owner of a store, stand or establishment of any kind at which soda water, soft drinks, cigars, tobacco, fruits, canned goods and other like articles are sold, who keeps it open for business on Sunday, is engaged in a work or business prohibited on the Sabbath day, or else the reasonable meaning of the statute must be put aside and a construction adopted that would be utterly opposed to the rules that, so far as our investi-

gation goes, have always obtained in the construction of Sunday laws.

Our attention has also been directed to the fact that there have been many and radical changes in the social, economic and business condition of the State since this statute was first enacted, and this of course is a matter of common knowledge. And the suggestion is made that the statute should be given such a construction as will reasonably conform it to present conditions and make it reasonably adaptable to the desires and wants of the people of today, and, therefore, as the public generally have become accustomed to buying on Sunday such things as McAfee kept for sale, the selling of articles like these should be treated as one of the necessities of modern habits of life. But, in our opinion, these changed and ever changing conditions in the customs, manners and habits of the people can not be allowed to alter the meaning or impair the efficiency of this statute. It must be given the same construction and effect today that it had yesterday, and in all cases such a necessity must exist to excuse the doing of work or business on Sunday as must have existed to excuse the doing of work or business on Sunday in more primitive times. But to meet the demands of new conditions and changing modes and habits of life, the scope and operation of the statute is constantly broadening, so that it may reach out and be applied to these new conditions as they come up and yet not depart from the rule that nothing short of necessity will excuse the doing of the work or business on the Sabbath day. As new developments in social, business and economic life are constantly bringing into view new customs, trades and callings, the statute as it reads must be applied to these new conditions, and the work or business subjected to the never changing test of necessity, judged by the facts and circumstances of the case under investigation.

We are also asked to set down some rule for the guidance of those who wish to carry on, as McAfee did, their trade or business on Sunday, and decide what articles McAfee might, for example, sell without violating the statute. But this we must decline to do, because, as we have said, each case must, in the nature of things, be determined by the facts and circumstances surrounding it. It might, under some circumstances, be a work of necessity for the storekeeper like McAfee to

open his place of business on Sunday for the sale of one or more of the many things that he had in stock, and under other circumstances it might be a violation of the Sunday law to sell any of them.

It is sufficient for the purposes of this case to say that McAfee does not rest his defense upon the ground that it was a work of necessity to sell sandwiches or cheese and crackers or sardines or oysters, but upon the ground that the conduct of his business was a work of necessity, and having found that it was not, the judgment is affirmed.