# Strand Amusement Company v. Commonwealth.

## (Three Cases.)

(Decided November 10, 1931.)

CLEMENTS & CLEMENTS and BEN D. RINGO for appellant.

J. W. CAMMACK, Attorney General, and GEORGE H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The appellant, a corporation, has filed motions for appeals in three cases in which it has been convicted of violating the Sunday closing law by reason of having operated moving picture theaters in Owensboro on different Sundays. The fines inflicted by juries are $250, $225, and $135, respectively. The motions are sustained, and the appeals granted. Disposition of them will be made in one opinion.

The pertinent portion of the statute, section 1321, which the appellant has violated, is as follows:

"No work or business shall be done on the Sabbath day, except the ordinary household offices. . . . If any person on the Sabbath day shall him-

self be found at his own, or at any other trade or calling, or shall employ his apprentices, or other person, in labor or other business, whether the same be for profit or amusement, unless such as is permitted above, he shall be fined not less than two nor more than fifty dollars for each offense. Every person or apprentice so employed shall be deemed a separate offense. . . . Provided that amateur sports and athletic games shall not be considered a work, labor, trade, business or calling within the meaning of this section."

The prosecutions are by indictment. Each accuses the defendant of the offense of "willfully and unlawfully employing persons in labor on the Sabbath day," with an appropriate negative averment covering the exceptions. One describes the offense as operating the "Bleich" theater for profit on May 4, 1930, and employing nine named persons in certain positions. Another covers the operation of the "Empress" theater on the same day and employing seven named persons. The third covers the operation of the "Bleich" theater on May 11, 1930, and employing eleven persons.

The cessation of ordinary labors and civil transactions on the Christian Sabbath, or another day in substitution, has been demanded by law from ancient times. Its origin is the Fourth Commandment, and the observance of Sunday is among the first and most sacred institutions of the Christian church. History informs us that the first Sunday civil law originated in Rome in the time of Constantine in the year 321 A. D. In 401 A. D., the Bishops petitioned the Emperor, praying that the public shows might be transferred from the Christian Sunday and from the fast days to some other day of the week, and it was so ordained in 425 A. D. The first Sunday law was passed in England about 925 A. D. The English statute of 1623 said nothing about working on the Sabbath, but prescribed that the holy keeping of the Lord's Day was "profaned by people going bear-baiting, bull-baiting, interludes, common plays, and other unlawful exercises and practices," and with such play the statute interfered. A century and a half elapsed after this first law before any work was forbidden on Sunday. The Statute of 29 Charles II (1678) became the basis of similar legislation in this country. Antedating it, however, in 1619, the year before the Pilgrims landed at Ply-

mouth, the Virginia House of Burgesses, the first legislative body to convene on American soil, enacted a rule requiring the rigorous observance of Sunday. And the terms of the Toleration Act of the Maryland Assembly in 1649 provided the penalty of death and confiscation of goods for atheistic and blasphemous utterances; fines and whippings for speaking reproachfully of any of the prevailing religious sects and factions; also for all who "prophane the Sabbath or Lord's Day, called Sunday, by frequent swearing, drunkenness or by any uncivil or disorderly recreation or by working on that day when absolute necessity doth not require it."

Our current statute, however, is based upon the Statute of 29 Charles II, and is in substantially the same language as that included in the first penal statute enacted in Kentucky. There has been added somewhere along the way the first sentence in prohibitory language, and the exceptions of the operation of railroads, boats, and street cars have also been subsequently written into it. "Person" has been substituted for "slave" and "separate" for "distinct." In 1926, the Legislature re-enacted the statute with the addition of the exemption of amateur sports and athletic games by declaring that they should not be considered as work, labor, trade, business, or calling within its meaning.

The constitutionality of Sunday prohibitory laws, which have been enacted in all the states of the Union, is not doubtful. Such statutes have been uniformly upheld. Commonwealth v. L. & N. R. Co., 80 Ky. 291, 44 Am. Rep. 475; 25 R. C. L. 1415. Although originating as a religious observance, the statutes are not to be regarded in these days as religious ordinances. They are not designed as punishment for violating a religious tenet, nor to enforce the views of any sect as to the sacredness of the holy day. While the institution is dear to him who reveres it for its divine origin, it has for the statesman and jurist a different significance. Like other prohibitory statutes of more engaging contemporary interest, they are not founded upon the principle of legislating morals, but upon the high regard for the principle of public welfare. Gray v. Commonwealth, 171 Ky. 269, 188 S. W. 354, L. R. A. 1917B, 93. Their purpose is to protect society from itself. The establishment of a compulsory day of rest is a legitimate exercise of the police powers of the state. The policy is based upon long experience and custom, proving that

periods of rest from ordinary pursuits are requisite to the well-being, physically and mentally, as well as morally, of a people. Debilities spring from uninterrupted labor, and the law is a beneficent and merciful one. It gives one day in seven to the poor and dependent, from the enjoyment of which no capital or power is permitted to deprive them. Hence, the strict inhibition of working any employee or other person on Sunday.

The application of this law to the operation of motion picture theaters is no longer an open question. Capital Theater Co. v. Commonwealth, 178 Ky. 780, 199 S. W. 1076.

The appellant concedes that application and the constitutionality of the statute generally. Its counsel argue, however, that since the re-enactment of the statute excluding from its operation athletic sports and amateur games it has become legislation unequal and arbitrary in its classification. In Stratman v. Commonwealth, 137 Ky. 500, 125 S. W. 1094, 27 L. R. A. (N. S.) 949, 136 Am. St. Rep. 299, a special statute prohibiting barbering on Sunday and prescribing a more onerous penalty than the general statute (section 1321) was held to be of that character and, therefore, unconstitutional. We do not conceive that those unaffected could on that ground have claimed that the principal act was unconstitutional. So, too, the objection presented by appellant in respect to the amendment is not available to it, for it is in no way concerned. Gordon v. Tracey, 194 Ky. 166, 238 S. W. 395; Commonwealth v. Kentucky Jockey Club, 238 Ky. 739, 38 S. W. (2d) 987, 988. Should the re-enactment be held void on the ground suggested, it could not affect these prosecutions for the original statute fully covers them, and it would have again become operative. Burnam v. Commonwealth, 228 Ky. 410, 15 S. W. (2d) 256.

Earnest complaint is made that this appellant, out of many violating the Sunday laws, has been singled out for its strict enforcement; it being declared in the record that there was a crusade against the operation of its theaters. Comparison is made of the peaceful, restful, and quiet character of their operation with the ribaldry and noisy enthusiasm accompanying baseball games and with the arduous labors of caddies engaged in a golf tournament. It is suggested that a law may become repugnant to the constitutional provisions respecting

equality of protection by the manner of its enforcement. In truth, a particular administration of a law may be unjust and discriminatory. Thus, in considering the application of a regulatory ordinance of San Francisco only to the operation of a Chinese laundry, it is said in Yick Wo v. Hopkins, Sheriff, 118 U. S. 356, 373, 6 S. Ct. 1064, 1073, 30, L. Ed. 220:

> "Though the law itself be fair on its face, and impartial in appliance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution."

The principle, however, is not applicable here, for no discretion is authorized in the administration or application of this statute. It is a fundamental principle that the failure of executive officers to enforce a specific law against a specific individual or set of individuals can never excuse the disobedience of that law by another.

It is to be noted from the statement of facts that the indictments under which the appellant was prosecuted are based upon that part of the statute denouncing the employment of other persons to work on Sunday, and not upon that which condemns the conduct of the business, and that each indictment included the employment of more than one person. The evidence and instructions followed the indictment, and the verdict and judgment assessed fines in each case much in excess of that which could have been imposed for employing one person only. Counsel vigorously attack the order overruling the demurrer to the indictment, and the further consonant proceedings, on the ground of multiplicity.

In the Capital Theater case, and others arising from the enforcement of the Sunday closing law, it has been held that in one penal action fines may be recovered for the employment of more than one person. Commonwealth v. Bowling Green Athletic Association, 207 Ky. 170, 268 S. W. 1088; Commonwealth v. Chesapeake & O. Ry. Co., 128 Ky. 542, 108 S. W. 851. See, also, Commonwealth v. L. & N. R. Co., 80 Ky. 293, 44 Am. Rep. 475; Louisville & N. R. Co. v. Commonwealth, 92 Ky. 114, 17 S. W. 274, 13 Ky. Law Rep. 439; Stratman v. Commonwealth, supra.

In Phoenix Hotel Co. v. Commonwealth, 153 Ky. 507, 156 S. W. 117, it was held proper to include in one penal action three charges of violating the act which prohibited the sale of game birds, this upon the same theory.

In none of those cases, however, was the prosecution by an indictment. A penal action is a "civil suit," though closely related to a criminal prosecution, for the recovery of statutory forfeitures inflicted as punishment for a public offense. Words and Phrases, Second Series, vol. 3, p. 942, Penal Action. Section 1139, Statutes, provides that fines or forfeitures "may be recovered by civil procedure." There is a marked difference prescribed in procedure by penal action and by indictment. The Criminal Code of Practice, sec. 11, says that proceedings in penal actions are "regulated by the Code of Practice in civil actions." Under that Code there may be joinder of actions. Civil Code of Practice, sec. 83, sets out specifically the classes of causes which may be united, and though actions for recovery of penalties for violating penal statutes are not mentioned, section 113 declares, "A pleading may contain statements of as many causes of action, legal or equitable . . . as there may be grounds for in behalf of the pleader." But there is no such privilege in prosecutions by indictment, which are regulated altogether by the Criminal Code containing in section 126 the explicit limitation of charging but one offense, with certain exceptions stated in section 127 permitting the charge in an indictment of more than one offense in a class of cases where it is frequently quite difficult to distinguish one from another. Allison v. Commonwealth, 135 Ky. 696, 123 S. W. 267.

That there may be one entire offense composed of divers violations of criminal laws cannot be gainsaid. Illustrative of this class of indictments for a single act embracing distinct offenses, but not regarded as duplicitous or multifarious, are indictments for maintaining a public nuisance (Curd v. Commonwealth, 210 Ky. 588, 276 S. W. 498); for criminal libel consisting of a single publication libeling more than one person (Tracy v. Commonwealth, 87 Ky. 578, 9 S. W. 822, 10 Ky. Law Rep. 611); for embezzlement of funds of several persons (Roland v. Commonwealth, 134 Ky. 170, 119 S. W. 760); for obstructing public justice by inducing two witnesses not to appear (Henderson v. Com., 185 Ky. 232, 215 S. W. 53); and for malfeasance based upon failure

to account for two certain fines collected (Short v. Commonwealth, 187 Ky. 279, 219 S. W. 165).

The test to be applied in the instant case is whether the indictment charges a combined act, and that is dependent upon whether the statute condemns a course of action in employing persons in labor on the Sabbath Day as a single offense.

The purpose of the statute is, as has been said in this opinion, to secure for every person employed a day of rest, and to accomplish that purpose it has been decreed by the Legislature that whoever deprives any individual—not a collection of individuals—of that period of rest commits an offense. Without doing violence to the statute and its manifest purpose, it is impossible to delete from its provisions the express provision: "Every person or apprentice so employed shall be deemed a separate offense."

We cannot conceive, as is argued, that this clear and emphatic statement of the statute was the expression of a legislative intent to magnify or minimize a single combined offense or adjust the punishment therefor according to the number of persons employed. A minimum of $2 and a maximum penalty of $50 for each offense is fixed by the statute. We cannot believe that the first General Assembly of the commonwealth and the several subsequent ones which re-enacted this law would have used this language as meaning other than what it distinctly says. If any other intention was in their mind, surely it could have been disclosed in a clearer and more certain form. Instead of this clause being incorporated for the purpose contended for, it seems to us that it was for the opposite purpose, to wit, to make it clear that an employer who deprived his employees or apprentices of his day of rest should be brought to trial for each and every one of them, and, if guilty, subjected to a fine of not less than $2 or more than $50 for each and every one of them. Unless such construction be given the statute, then under an indictment like the one before us the maximum penalty that could be assessed would be $50.

This construction of the statute was recognized in the penal actions cited, for in them the question decided was the right of the commonwealth to recover a multiplicity of penalties—one for each person employed by the defendant—and neither the reasoning or conclusion indicated any purpose of the court to consider that there was only one offense.

It appears in McAfee v. Commonwealth, 173 Ky. 83, 190 S. W. 671, L. R. A. 1917C, 377, the defendant was indicted for engaging in work and conducting his business on Sunday by selling soft drinks, candy, etc. In the agreed statement of facts it was stipulated, among several other things, that the defendant and one servant were employed in the business. The court imposed a fine of $100 or double the maximum penalty prescribed by the statute for one offense. The excessiveness of the penalty was apparently waived, since it is not mentioned either in briefs filed in the record or the opinion, and it is clearly evidenced from the opinion that the case was to test the applicability of the statute to the conduct of such business. A fine in excess of $50 was necessary at that time to maintain the appeal and obtain a construction of the law in this court. Phoenix Hotel Co. v. Commonwealth, supra. The feature of the statute we now have before us, that is, the employment of other persons to labor on Sunday, was not involved, and it cannot be deemed an authority in the case before us.

The true nature of prosecutions under statutes like the one here involved is admirably discussed in the case of In re Henry, 123 U. S. 372, 8 S. Ct. 142, 31 L. Ed. 174. Section 5480 of the U. S. Revised Statutes (now Criminal Code, sec 215 [18 USCA sec. 338]) provided that if any person should concoct a scheme to defraud by the use of the mails and in the execution of such scheme place any letter or packet in any post office or receive any letter or packet from the post office, he should be punished by a prescribed fine and imprisonment. The statute expressly provided that the indictment might severally charge offenses to the number of three when committed within the same calendar month, the court being permitted to give a single sentence on the verdict. In construing these provisions, the court said:

"We have carefully considered the argument submitted by counsel in behalf of the petitioner, but are unable to agree with him in opinion that there can be but one punishment for all the offenses committed by a person under this statute within any one period of six calendar months. As well said by the district judge on the trial of the indictment, 'The act forbids, not the general use of the post-office for the purposes of carrying out a fraudulent scheme or device, but the putting in the post-office of a letter or packet, or the taking out of a letter or packet

from the post-office, in furtherance of such a scheme. Each letter so taken out or put in constitutes a separate and distinct violation of the act.' It is not, as in the case of In re Snow, 120 U. S. 274, 30 L. Ed. 658, 7 S. Ct. 556, a continuous offense, but it consists of a single isolated act, and is repeated as often as the act is repeated.

"It is indeed provided that three distinct offences committed within the same six months may be joined in the same indictment; but this is no more than allowing the joinder of three offenses for the purposes of a trial. In its general effect this provision is not materially different from that of section 1024 of the Revised Statutes [18 USCA sec. 557] which allows the joinder in one indictment of charges against a person 'for two or more acts or transactions of the same class of crimes or offenses,' and the consolidation of two or more indictments found in such cases. Under the present statute three separate offenses committed in the same six months may be joined, but not more, and when joined there is to be a single sentence for all. That is the whole scope and meaning of the provision, and there is nothing whatever in it to indicate an intention to make a single continuous offense, and punishable only as such, out of what, without it, would have been several distinct offenses, each complete in itself."

In the instant case, there is no such express provision in the statute as authorizes a single sentence or a joinder of offense. The Supreme Court construed the statute before them as meaning that the mailing or receipt of each letter, though done for the purpose of carrying out one fraudulent scheme, was a separate offense despite the absence of express words in the statute to that effect. A fortiori, this court cannot make a single or combined offense out of a series of what the statute expressly declares shall constitute separate, distinct offenses.

The indictments charging more than one offense, and the commonwealth having failed to elect which one of them it would prosecute, demurrers should have been sustained. Lovelace v. Commonwealth, 193 Ky. 425, 236 S. W. 567, 26 A. L. R. 364. Subsequent proceedings following that error were, of course, improper.

Another ground for reversal pressed upon us is that the trial court should have recused himself according to the defendant's motions. We quite agree with the appellant's contentions that a defendant in a criminal proscution is entitled to a trial by a fair and impartial judge, and that it should be so conducted that the defendant will feel and know that he has had such a hearing. But with the exception of having limited the arguments, no claim is made of any overt act during the trial on the part of the judge which could be construed as unfair or unjust. Acts and utterances of the judge before the trial form the basis of the criticism.

It was charged in the affidavits that the judge had conferred with members of the Owensboro Ministerial Association and had stated to them and others, including an address to a Sunday school class, that he was opposed to picture shows being conducted on Sunday and that they should not be permitted; that those conducting them should be arrested and rearrested and every possible measure taken to prevent their operation. He had expressed criticism of the line of argument which the police court had permitted in trials before it, and stated that if the cases had been before him he would have limited the argument to ten minutes and to the question of guilt of the defendant. It was stated that in the judge's charge to the grand jury he had commended the Ministerial Association for its campaign against the operation of the shows and had referred to the challenge offered by those who were violating the Sunday laws by continuing the offense. When six indictments had been returned against the defendant, he overruled the suggestion of its counsel that they be not presently tried and announced his purpose to have an immediate trial since the defendant was openly violating the law. A conclusion was vigorously stated that the judge was prejudiced and hostile to the defendant and would not give it a fair trial and that he had expressed the opinion that it was guilty of violating the Sunday law.

As a very persuasive influence in this consideration, it is to be noted that the defendant offered no defense whatever in the trial except the legal ones, which have been disposed of. It admitted its guilt of everything with which the distinguished judge had charged it. But the essence of the statements of the judge was to condemn the offense rather than the offenders. A circuit judge is a conservator of the peace throughout the state

(section 966 of the Statutes), and as such is charged with the duty of preserving peace and good order and of enforcing the criminal laws. 12 C. J. 522. That a judge abhors and publicly condemns the violation of any and all laws, and manifests a disposition to punish those guilty, assuredly should not disqualify him to perform his judicial offices. Should any other attitude be expected of him? The operation of moving picture shows on Sunday had been specifically held by the court of last resort in the state to be included within the prohibition of the statute. The subject of the attitude of a trial judge towards crime and the nature of the charges made against him as manifesting his disability is fully covered by the opinion in Stamp v. Commonwealth, 195 Ky. 404, 243 S. W. 27. The facts alleged in this record are not at all comparable to those disclosed in that case, which held it was error for the trial court not to have vacated the bench. See also Ledford v. Hubbard, 236 Ky. 373, 33 S. W. (2d) 345. The court did not err in overruling the motions.

Lastly, complaint is lodged against the court for limiting the argument to fifteen minutes and preventing counsel from referring to the claim that the defendant was being singled out for prosecution while many others were guilty of violating the Sunday closing law, and for directing the jury not to regard statements along that line. The evidence was confined to two witnesses—police officers—who testified to the facts showing the defendant was guilty of the offense charged. Neither was cross-examined and the defendant offered no evidence whatever. There was no conflicting evidence nor complicated instructions to be argued, and, unless counsel should have been permitted to indulge in an argument unsupported by the record, the time allowed was liberal enough. Whether the prosecuting officers did or did not enforce the law against others was no legal concern of this defendant.

For the errors in respect to the indictment, the appeals are granted and the respective judgments are reversed.

Whole court sitting.

JUDGE THOMAS, JUDGE WILLIS, and JUDGE BRATCHER, dissenting from so much of the opinion as holds the indictment duplicitous.

### DISSENTING OPINION BY JUDGE WILLIS.

It has been said that one who causes two blades of grass to grow where only one grew before is a human benefactor; but such a tribute would hardly be deserved by a decision that multiplied penal prosecutions for violation of a single statute.

I disagree with the decision of the majority on the reversal of the judgments, and the practical importance of the question on which the reversal is rested, justifies a statement of the reasons why I think the judgments should be affirmed.

The appellant ran its theaters in flagrant violation of the statute. It was indicted for three offenses, the several indictments disclosing that eleven persons were employed on one, nine upon another, and seven upon a third occasion. No defense was interposed on the merits, but the appellant insisted that it was prejudiced by the procedure. Its position is that the commonwealth should cause twenty-seven indictments to be returned against it, instead of one indictment for each place of business operated by it on Sunday in violation of the law. I think that position untenable, and but for the solemn conclusion of a majority of the judges, I would feel justified in characterizing the contention more vigorously.

The statute is short and simple. It says:

"If any person on the Sabbath day shall himself be found at his own, or at any other trade or calling, or shall employ his apprentices, or other person, in labor or other business, whether the same be for profit or amusement, unless such as is permitted above, he shall be fined not less than two nor more than fifty dollars for each offense. Every person or apprentice *so employed shall be deemed a separate offense.*" Ky. Stats., sec. 1321.

According to my view of the statute, the offense consists in conducting the prohibited business upon the Sabbath Day. It does not consist in the employment of the persons who operate it. That is a mere incident of the business—a means of carrying it on. It may be true that the policy back of the law is to subserve the good of the workers by providing a compulsory day of rest, but the method of the law is to forbid the business itself. McAfee v. Com., 173 Ky. 83, 190 S. W. 671,

L. R. A. 1917C, 377. In that case the indictment charged one offense, the proof showed two persons engaged in the forbidden work, and a fine of $100 was affirmed.

There is abundant authority to the effect that where the offense consists in exercising one's ordinary calling or business there can be but one offense for one and the same day. Westfall v. State, 4 Ga. App. 834, 62 S. E. 558; Crepps v. Durden, Cowp. 640, 98 Eng. Rep. 1283; In re Snow, 120 U. S. 274, 7 S. Ct. 556, 30 L. Ed. 658; Muckenfuss v. State, 55 Tex. Cr. R. 229, 116 S. W. 51, 20 L. R. A. (N. S.) 783, 131 Am. St. Rep. 813, 16 Ann. Cas. 768; Friedeborn v. Com., 113 Pa. 242, 6 A. 160, 57 Am. Rep. 464; State v. James, 81 S. C. 197, 62 S. C. 214, 18 L. R. A. (N. S.) 617, 128 Am. St. Rep. 902, 16 Ann. Cas. 277.

But it is said these cases are distinguished by the provision peculiar to the Kentucky statute that "every person or apprentice so employed shall be deemed a separate offense." My construction of that provision is that it refers solely to the punishment to be inflicted. It graduates the penalty according to the extent of the violation measured by the number of persons engaged therein. The minimum punishment for the offense is multiplied by the number of persons engaged in conducting the business. Louisville & N. R. Co. v. Com., 102 Ky. 300, 43 S. W. 458, 19 Ky. Law Rep. 1462, 53 L. R. A. 149. When the statute says that each person so employed shall be deemed a separate offense, it is not the equivalent of saying that each person employed in the business shall constitute a distinct offense. When a thing is to be "deemed" something that it really is not, it means merely that it is to be so treated, with the attendant consequences, but it is not necessarily that something else. 60 L. J. Q. B. 380, quoted by Bouv. Law Dict., vol. 1, p. 814, in defining "Deem."

To me the intention of the statute is very plain. It was designed to punish the violation of the Sabbath by inflicting upon the wrongdoer a penalty of not less than $2 or more than $50 for each person employed by him in conducting the prohibited business. And such heretofore has been the settled construction of the statute. 37 Cyc. 576; Com. v. C. & O. Ry. Co., 128 Ky. 542, 108 S. W. 851, 852, 32 Ky. Law Rep. 1400; Capital Theater Co. v. Com., 178 Ky. 780, 199 S. W. 1076; Com. v. Bowling Green Athletic Ass'n, 207 Ky. 170, 268 S. W. 1088.

It has been clearly and expressly decided that the offense of each person is single for each Sabbath and the punishment graduated by the number of persons employed. The commonwealth "has one *cause of action* against appellee for as many of the penalties as she is able to show servants or employees, were caused to work and labor on the Christian Sabbath." Com. v. C. & O. Ry. Co., supra. It is vainly sought to differentiate these cases upon the ground that in each of them the prosecution was by a penal action whilst the present cases proceeded upon an indictment. But that distinction is unsound. The rule respecting duplicity in indictments prevails in penal actions. Louisville & N. R. Co. v. Com., 102 Ky. 300, 43 S. W. 458, 19 Ky. Law Rep. 1462, 53 L. R. A. 149; Allison v. Com., 135 Ky. 693, 123 S. W. 267.

The statements in the present opinion respecting joinder of causes of actions to recover penalties for separate offenses are in direct conflict with the decisions in the cases just cited. The provisions of the Civil Code concerning the joinder of civil actions are inapplicable to penal actions, as a simple reading of the sections cited will demonstrate. They relate to actions upon contracts, actions concerning real property and personal property, injuries to character, and injuries to person and property. Civil Code of Practice, sec. 83. They have no possible reference to penal actions. Louisville & N. R. Co. v. Com., 102 Ky. 300, 43 S. W. 458, 19 Ky. Law Rep. 1462, 153 L. R. A. 149. The provisions of section 113, subsection 2, Civil Code of Practice, permit the plaintiff to set up as many causes of action as he may have, but it does not permit the joinder of actions not authorized by section 83 of the Civil Code of Practice. Although this law is almost as old as the state and has been before the courts many times, this is the first time that the construction now advanced and advocated has been adopted.

It is unfortunate that the court should now depart from the rule long followed, and take a distinctly backward step. The multiplication of prosecutions tends to congest the business of the courts, leads to delay, and operates to defeat justice. It promotes no good policy. I do not contend that the safeguards provided by law for the security of the rights of accused individuals should be relaxed because of the urgent need for speeding up the administration of justice. But I most earnestly protest against the multiplication of unnecessary technicalities that tend to hamstring prosecutions and

to hamper the punishment of those admittedly guilty of a bold defiance of the law.

I am authorized to state that Judges THOMAS and BRATCHER concur in this opinion.