## Purnell, et al. v. Maysville Water Company.

(Decided November 29, 1921.)

### Appeal from Mason Circuit Court.

1. Nuisance—Abatement—Board of Health.—The State Board of Health or county board of health of a county where a water company is operating may require such water company to abate any nuisance which it may be maintaining that causes sickness among the people.

2. Nuisance—Proceeding Against Water Company—Board of Health. —A water company engaged in supplying water to the city and its inhabitants is a quasi public institution and it is its duty to provide water suitable for the purposes for which it is to be used, and if it fails to do so and provides muddy, filthy, impure and unwholesome water it may be proceeded against criminally by the board of health either of the state or of the county in which the water company operates.

3. Nuisance—Abatement—Board of Health.—While a board of health may cause a nuisance which produces sickness or disease in the community to be abated it has no power or authority to direct the manner in which the nuisance shall be abated or to prescribe any particular method to be employed in the abatement of the nuisance, but can only require its abatement.

4. Nuisance—Abatement—Proceeding Against Water Company.—Although a water company is guilty of furnishing to a city and its inhabitants impure and unwholesome water the board of health cannot prosecute said water company criminally for failing to obey an order of the board of health requiring the water company to install a filtration plant to improve, clarify and purify the water, but its powers are confined to abatement of the nuisance without the right to direct the manner of its abatement.

CHAS. I. DAWSON, Attorney General, J. M. COLLINS, BECKHAM, HAMILTON, BECKHAM & POLSGROVE, FRED FORCHT and C. U. McELROY for appellants.

WORTHINGTON, COCHRAN, BROWNING & REED and HUMPHREY, CRAWFORD & MIDDLETON for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The appellee, Maysville Water Company, which was incorporated in 1879 and installed its plant and began to furnish water to the city of Maysville in 1880, and has since been at all times and is now so engaged, brought this action in the Mason circuit court on the 21st day of May last, praying an injunction restraining H. P. Purnell, as judge of the Mason county court, from proceeding

to try and from trying seventeen warrants or any one or more of them, issued by the said judge against the water company for failure to obey an order of the State Board of Health to build and install in connection with its water system a filtration plant and to restrain and enjoin Dr. A. T. McCormack and other members of the State Board of Health, their officers and agents from instituting or causing to be instituted other criminal proceedings against the water company and from prosecuting the said company on the warrants already issued. The case was elaborately prepared and the lower court granted the relief sought by enjoining County Judge Purnell and the State Board of Health from trying the water company on the existing warrants and from issuing new warrants or instituting new criminal proceedings against said company for its failure to obey the order of the board of health to install a filtration plant. With the petition is filed a copy of the franchise ordinance granted in 1879, with the later additions and extensions made by the city of Maysville and accepted by the water company. By the franchise it is provided that the water company should install and have two vertical engines of certain design and capacity as pumping machinery, and that the said water company "shall take the water for the supply of said city, and the inhabitants thereof, from the Ohio river, at a point above the mouth of Limestone creek, and shall carry it thence through a force main which shall be independent of the distributing system of pipes, to a reservoir composed of two basins, each of a capacity of holding one million gallons of water, located on Newdigate's hill, at or near the head of Limestone street, out of which reservoir the said city, and its inhabitants, shall be supplied with water through a pipe system."

No provision whatever was made by the ordinance for sedimentation, filtration or chlorination of the water and no arrangements were made by the water company for the clarification or purification of the water except as provided in that part of the ordinance quoted above. At a later date arrangements were made by the water company for the treatment of the water supply with liquid chlorine and the water was taken from wells or shafts near the river's edge and not from the river, so that the water percolated through the soil or earth into the wells or shafts, and was somewhat clearer and freer from germs harmful to the human organism. Thereafter the State Board of Health, having become convinced that the water

supply of Maysville was contaminated with bacteria known as coli-b, and was the cause of sickness in that city, gave the following written notice to the water company in April, 1920:

"Gentlemen:

"Having been duly advised by the county health officer of the existence throughout the past year of numerous cases of typhoid fever, an epidemic and communicable disease, amongst persons furnished with water by you within the city of Maysville, in Mason county, Kentucky, and having caused an investigation to be made by Captain C. N. Harrub, of the United States Public Health Service, who is acting state sanitary engineer of the state of Kentucky, the results of which were published in the bulletin of the State Board of Health, vol. ix, No. 5, dated July, 1919, copy of which is attached hereto.

"Now, therefore, be it known, that the State Board of Health of Kentucky, being fully advised, hereby notifies you that repeated analyses of the water furnished by you to the people of Maysville show it to be a nuisance, source of filth and cause of sickness, and you are requested within forty-eight hours from the service hereof to ameliorate the same by causing such water to be treated with liquid chlorine so that the filth therein may be rendered less harmful to the consumers thereof, and, further, you are requested within 120 days from the service hereof to install such sedimentation basin or basins, filter and chlorination plant as will, when and if the plans for which, approved by the state sanitary engineer in writing, abate and remove the said nuisance, source of filth and cause of sickness in the present water supply of the said city of Maysville."

The company was making, or soon thereafter made, quite a number of improvements in its plant looking to the purification and betterment of the water supply for the city, but it did not install, as directed by the notice of the board of health, a filtration plant, but it did provide an efficient chlorination plant and also arranged sedimentation basins, so that its water was not only clear and good in appearance but was free from bacteria in such number as to be harmful and dangerous to human beings, and at the same time was pleasant to the taste and good for domestic purposes. Before these improvements were completed and after the lapse of more than one hundred and twenty days from the giving of the notice by the board

of health the board sued out before Judge Purnell of the Mason county court the seventeen criminal warrants mentioned above, charging the defendant company with maintaining a nuisance by failing to comply with the order of the board of health to install a filtration plant as set forth in the notice above copied. A trial of the defendant on one of the aforesaid warrants before said judge resulted in its conviction and the infliction of a fine of $15.00, from which judgment no appeal would lie. As the board of health and the judge of the county court were preparing to and about to try the defendant upon the other sixteen warrants charging the same offense committed as alleged on different days, this suit was instituted by the water company as aforesaid to restrain both the judge of the county court and the board of health from so doing and from instituting other prosecutions. The lower court having granted the relief sought and enjoined the judge of the county court and the State Board of Health from proceeding with the trials and from instituting new prosecutions, Judge Purnell and the board of health have appealed to this court and are here insisting that the injunction be dissolved.

The evidence is long but contains few contradictions. With it are filed a number of exhibits, bottles of water taken at different times and from different faucets connected with the appellee water company's system, showing more or less matter in solution. While the water furnished by the company to the city and its inhabitants was muddy and impure at different times from the installation of the plant in 1880 until after the institution of the criminal prosecutions mentioned above, it is admitted by the parties and satisfactorily proven in the evidence that the water supplied by the appellee company to the city of Maysville and its inhabitants at all times since February 1st last and at the time of the institution of this action and now is not only clear and free from sediment but is pure and wholesome and suitable for the purposes for which it is used by the city and its said inhabitants. It will be noted that the order of injunction granted by the lower court is specifically confined in its effect to restraining and enjoining the judge of the Mason county court and the board of health, their agents and officers, from further prosecuting the pending warrants against the water company and from instituting new prosecutions against said company to compel it to *install said filtration plant,* but it does not enjoin or restrain the defendants

or either of them from instituting or prosecuting warrants or other criminal proceedings against the water company for the maintenance of a nuisance, by furnishing impure or unwholesome water to the city and its inhabitants or from doing any other unlawful act. It is apparent from the nature of the proceedings instituted and from the evidence that the board of health, after examination of the water plant at Maysville and the water furnished, conceived the idea that a filtration plant would best remedy the prevailing unsanitary condition and create a clear and wholesome supply of water for said city and its inhabitants, and to obtain this result for said city and its inhabitants determined to require the water company to install and operate in connection with its system a filtration plant. This the evidence shows would cost as least $60,000.00. As the company had been unable to pay a dividend upon its common stock for part of the time and only a small dividend upon its preferred stock and has no funds nor credit, it is argued by its counsel that to require it to install a filtration plant at a cost of $60,000.00 would amount to a confiscation of its property. The water company also insists that as it takes its water supply from the Ohio river at the point designated by the city in its franchise contract and is and has been at all times furnishing to the city and its inhabitants the character of water called for by the contract and contemplated by the parties at the time of the making of the contract, it is under no legal obligation to install either a filtration, sedimentation or chlorination plant for the betterment of the water supply, and it relies upon the doctrine applied in the well known case of the City of Georgetown v. Georgetown E. & P. Company, reported in 134 Ky. 608. The facts in that case, we think, are somewhat different from those of this case; the issues there involved were very different from the ones here. On the other hand the board of health and defendants insist that the board of health has ample power under section 2057, Ky. Statutes, to make and enforce the order of the board requiring the water company to install a filtration plant, for such an order is but an exercise of the police power of the state for the common good, which is paramount to any and all rights of the water company, and the plea of the water company that the order made by the board impairs the contractual rights of the company, denies it the equal protection of the law, and takes its property

without due process, is unavailing. Without consider-
ing all the questions raised by the pleadings and by coun-
sel in brief, we may confine this opinion and decision of
this case to the one controlling question: What power
has the board of health of the state of Kentucky, under
section 2057 of the Ky. Stats., to order and direct a water
company furnishing an impure and objectionable supply
of water to employ or adopt any one method, however
well proven, to the exclusion of others, to improve its
water supply and thereby abate the nuisance? We have
no doubt that the State Board of Health may, under said
sec. 2057, abate any nuisance in this state caused by filth
which induces sickness. In this respect the powers of
the board are broad but not unlimited and must be exer-
cised within a sound discretion; not whimsically or ca-
priciously nor arbitrarily. If the board of health in deal-
ing with such matters does not exceed its powers nor
abuse its discretion its orders will be upheld by courts as
final and conclusive. In the evidence we find that Dr.
McCormack, secretary of the State Board of Health and
one of the best known authorities on sanitation in this
Commonwealth, testified that he had made several exam-
inations of the chlorination plant installed by the Mays-
ville Water Company and of the water supply after the
installation of said chlorination plant and that the system
employed is the best known to science. Upon this sub-
ject he says: ''Now the water when it leaves the reser-
voir is chlorinated. It is chlorinated by the most effi-
cient process that is known to science. Chlorine is con-
stantly added, and it is added by a careful operator, who
does his work as well as it could be done, as well as it is
done anywhere.'' It is said the water supply is clear, soft
and suitable for all domestic purposes. While this is not
brought about by the installation of a filtration plant by
the water company it has been accomplished by the pro-
vision of sedimentation basins and chlorination of the
water, so that the same is not only clear and good to look
upon but pure, wholesome and free from coli-b and other
dangerous bacteria which formerly infested and contami-
nated the water furnished the city. Although, as said
above , the board of health has the power to abate a nui-
sance, source of filth or cause of sickness, it has no manda-
tory power enabling it to direct the method by which the
result shall be accomplished. It can only cause the abate-
ment of the nuisance and is not concerned with the method
by which it is done. In other words, it may stop the fur-

nishing of impure and dangerous water to a community, but it has no power to direct a water company to install any particular character of plant for sedimentation, filtration or chlorination of the water, and the water company may adopt any system that may seem best or expedient to it, if the system adopted produces the results desired—clear, soft, wholesome water. It, therefore, appears that the board of health in directing the installation of a filtration plant by the Maysville Water Company exceeded its authority under the statutes, and when it caused warrants to be issued against the water company charging it with the offense of failing to obey the order of the board to the extent of installing a filtration plant, it acted without and in excess of its authority. It is the province of courts of equity to enjoin such acts or conduct of public officials when they lead to oppression and irreparable injury. As the judgment of the lower court granted this relief and no more the judgment is affirmed.