**CITY OF ASHLAND, Kentucky, et al.,**
**Appellants,**

v.

**HECK'S, INC., and James McCann, Manager,**
**Appellees.**

Court of Appeals of Kentucky.

April 29, 1966.

A. W. Mann, Arthur T. Bryson, Jr., Ashland, for appellant.

H. David Hermansdorfer, Diederich & Hermansdorfer, Ashland, for appellee.

PALMORE, Judge.

The core question in this case is whether the Sunday closing law, KRS 436.160, can be enforced against a department store, or so-called "discount house," while other establishments variously denominated as "pharmacies" or "drug stores," "groceries," "supermarkets" and "car washes," some of which sell many of the same types of mer-

chandise as the discount house, are openly permitted to do business as usual on Sunday. Obedient to the precept of Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), the chancellor adjudged such enforcement to be unlawfully discriminatory under the equal protection clause of the 14th Amendment of the United States Constitution.[1]

Shortly after it was decided in Arlan's Dept. Store of Louisville v. Commonwealth, Ky., 369 S.W.2d 9 (1963), that a department store is not a "work of necessity" excepted by KRS 436.160(1), it became known to the merchants, Chamber of Commerce, and public officials of Ashland that the appellee Heck's, Inc., a West Virginia corporation, intended to open a store in Ashland and do business on Sundays. Various meetings were held and discussions were had in which the Mayor of Ashland advised the president of Heck's that the Sunday law would be enforced. Heck's agreed to remain closed on Sunday provided the law would be equally enforced. Other merchants who had customarily remained open on Sunday evidently were disturbed, and early in September of 1963 the Mayor issued a palliative statement in which he said, among other things, that although grocery stores are not specifically exempted by the statute, "they always have been considered as work of necessity. This has never been challenged in the courts."[2] In this statement it was made clear that the enforcement policy was to be directed at department stores, and particularly any firm that might, while complying with a similar law in West Virginia, expect to evade the law in Kentucky. Later on,[3] after conferring with the Mayor and commissioners of the city, the executive secretary of the Chamber of Commerce issued an "Open

Letter to Business Houses Which Have Been Open on Sundays in Ashland for Many Years" reiterating some of the comments made in the Mayor's statement and containing the following remark:

"There has never been any desire to interfere with the operation of any business which, historically, has been in operation here on Sundays and which has not had its 'operation of a necessity,' or lack thereof, argued before the Appellate Court of the Commonwealth of Kentucky."

Heck's remained closed on the six Sundays between September 8, 1963, and October 13, 1963, inclusive, and although numerous other establishments of the kinds heretofore mentioned continued to do business on those days, no arrests were made or citations issued against any of those so engaged. Heck's then opened on Sunday, October 20, 1963, and remained open on the following four Sundays. On each of these five Sundays citations were issued against various employes of Heck's. Citations were issued also against the operators of several of the other and previously unmolested businesses. As the chief of police testified, on the first Sunday Heck's opened, "that is the Sunday I enforced the law." Some 50 or 60 cases, including six against Heck's personnel, came on for trial in the city police court on November 20, 1963. The six cases involving employes of Heck's were tried and the court pronounced a fine of $50 and costs in each. All the other cases were either dismissed (some for good cause, as in the instance of "filling stations," which are specifically excepted from the operation of the statute) or continued indefinitely. One was continued even after the defendant, a grocery store clerk, had entered a guilty plea.

---

1. We might add that a violation of that clause would also violate Section 2 of our own Constitution, which precludes the existence, hence the exercise, of arbitrary power.

2. To the contrary, see McAfee v. Commonwealth, 173 Ky. 83, 190 S.W. 671, L.R.A.

1917C, 377 (1917), holding that the Sunday operation of a grocery store was not a work of necessity.

3. This was on October 29, 1963, following a number of citations which are hereinafter mentioned.

This proceeding was filed by Heck's and its manager (one of the defendants tried on November 20) on November 29, 1963. The complaint demanded injunctive relief against the City of Ashland and its Mayor, Chief of Police, and Police Judge. The circuit court held two hearings, one on December 16, 1963, and the other on June 17, 1964. At the conclusion of the first hearing the chancellor dissolved a temporary injunction but declined to rule on the merits because he felt it was "too early for this court to make a finding as to whether the law will or will not be enforced against all open violators." He therefore ordered that the proceeding be continued until a later date "at which time either or all parties may introduce further evidence on the merits."

At the last hearing most of the cases still remained technically on the docket of the police court,[4] but from the testimony of the police judge given on that occasion it is obvious that in the absence of some authoritative determination to the contrary he will regard the Sunday operation of car washes, drug stores, groceries and markets as "work of necessity." Hence it is reasonably clear that if relief is denied in this action the employes of Heck's will be forced to comply with the law and all of the others in question will be treated as exempt.

As in *Yick Wo*, there is no question with respect to the validity of the statute the city is attempting to enforce against Heck's and its employes. So it was also in the case of City of Covington v. Gausepohl, 250 Ky. 323, 62 S.W.2d 1040 (1933), in which the city was enjoined from discriminating in favor of farmers and hucksters and against storekeepers in the enforcement of an ordinance prohibiting the placing of boxes, barrels, baskets and merchandise upon its sidewalks. If there is any distinction between this and the *Gausepohl* case we are unable to find it, and from the studious omission of any reference to it in their brief we assume the appellants labor under the same difficulty.

It was held in the *Gausepohl* case that instead of enjoining all enforcement of the ordinance involved the trial court "should only have enjoined the city from making discriminations in its enforcement." Accordingly, the injunction decreed in this case was made subject to the express proviso that it "shall in no wise interfere with the arrest and prosecution of plaintiffs or any of their employees when such arrest and prosecution are part of the just and equal enforcement of KRS 435.160 against all known violators."

Athwart the argument that injunctive relief cannot be had in this type of case lies the hard fact that in *Gausepohl* it was. See also Purnell v. Maysville Water Company, 193 Ky. 85, 234 S.W. 967, 23 A.L.R. 223 (1921), and City of Harrodsburg v. Southern Ry. Co. in Kentucky, 278 Ky. 10, 128 S.W.2d 233 (1939), in each of which criminal proceedings were restrained. Whether the proceeding is an attempt to enforce an invalid law or to enforce a valid law in an invalid manner makes no logical difference. "The rule that equity does not enjoin criminal proceedings is not an invariable one. Cases may and do arise which call for such relief. It may be justified by exceptional circumstances and by the necessity to afford adequate protection to constitutional rights." 28 Am.Jur. 748 (Injunctions, § 238). How else is the guaranty of equal protection to be enforced? Rarely could it be done in the course of each individual prosecution, because, as it was remarked in Ex parte Commonwealth of Virginia, 100 U.S. 313, 319, 25 L.Ed. 667, 669 (1880), "the violation of the constitutional provisions, when made by the

---

4. According to the chancellor's findings of fact, "Fifty-five of the 58 cases, including one matter where the offender entered a plea of guilty, have been arbitrarily dismissed, filed away or no action has been taken as to them. The reasons assigned being that the works involved were 'works of necessity' in most cases but no reason at all was assigned in some cases."

judicial tribunals of a State, may be, and generally will be, after the trial has commenced. It is then, during or after the trial, that denials of a defendant's right by judicial tribunals occur. * * * Nor can the defendant know until then that the equal protection of the laws will not be extended to him. Certainly, until then he cannot affirm that it is denied, or that he cannot enforce it, in the judicial tribunals."

■ With respect to the argument that as admitted violators of the law the plaintiffs do not have clean hands and thus are not entitled to equitable relief, we think the answer is that if a person singled out for prosecution under a law that is not being enforced against anyone else could be denied relief because he stands in violation of that law, in practical effect the equal protection clause of the 14th Amendment could never be invoked against any arbitrary and wilful discrimination in the enforcement of criminal laws. That simply cannot be.

In Cohen v. Webb, 175 Ky. 1, 192 S.W. 828, 830 (1917), it was said that criminal prosecutions cannot be enjoined unless property rights are involved and it is necessary in order to prevent a multiplicity of suits and consequent irreparable injury. In view of the later opinions heretofore cited it must be concluded that *Cohen* has been overruled.[5]

In Strand Amusement Co. v. City of Owensboro, 242 Ky. 772, 47 S.W.2d 710 (1932), the plaintiffs attacked a city ordinance imposing penalties for the operation of commercialized amusement on Sunday. This court held they had no standing in equity because, regardless of whether the ordinance was valid, they were in violation of the state law on the subject. The case did not, however, as in *Gausepohl* and this, involve a tenable and valid claim of unconstitutional discrimination. The same distinction applies to Gastineau v. Bradley, Ky., 249 S.W.2d 529 (1952).

Appellants portray appellees' theory of relief in terms of "two wrongs make a right," that so long as any other violator goes unwhipped then appellees claim the right to go their merry way with impunity. No. It is the other way around. There are in fact two wrongs, one being the violation by appellees of the Sunday statute, and the other being appellants' violation of the Constitutions of this state and of the United States. It is appellants who would use the appellees' wrong to blot out their own. As we see it, the judicial problem presented by these circumstances resolves itself into a matter of weighing one policy against the other, and when that is done we find the constitutional right to be of greater importance than our reluctance to give succor to a passing law violator as an unavoidable incident to the preservation of that right.

■ Probably no law contrived by man for his own governance ever has been or will be enforced uniformly and without exception. But the Constitution does not demand perfection. It is only the obvious and flagrant case that warrants relief, and unquestionably this instance, in which appellees are the only persons found guilty in Ashland in a quarter century, falls in that category. Certainly we do not construe the judgment, nor can it be construed, as appellants say, to mean that the successful prosecution of any charge under the Sunday law will require proof that every other known violator has been or is being prosecuted.

In fairness to the municipal officers who are engaged in this litigation, let it be understood that there is no suggestion of a dishonest or opprobrious motivation in their actions and policies. On the contrary, it is manifest that they are the innocent victims of a persisting legislative neglect, disinclination or inability (whichever it may be) to come to grips with the problem—indeed, the obligation—of bringing a poor law into conformity with the

---

5. And indeed a cursory reading of it will demonstrate that it should be.

facts of life. Nevertheless, "the equal protection of the laws" vouchsafed by the 14th Amendment to every person is not qualified; it is absolute; it cannot be denied, either in bad faith or in good faith.

■ It is suggested that against the backdrop of contemporary mores perhaps we ought to say the other businesses that are being allowed to operate on Sunday in Ashland are works of necessity. However, we do not believe they actually are. Food and drugs are necessities of course, but it does not follow that there is any more of a necessity for them to be kept on open sale for the general public, particularly in conjunction with a variety of strictly nonessential items, all seven days of the week than it is for them to be kept on sale all night. Clearly this is a legislative matter.

The judgment is affirmed.

MONTGOMERY, J., dissenting.

STEWART, J., not sitting.

MONTGOMERY, Judge (dissenting).

One of the appellants is the police judge in whose court prosecutions for violation of the Sunday closing law were entered against appellees and many others. There were a large number of these prosecutions with differing dispositions. The effect of the majority opinion is to hold that such judicial officer may be enjoined from proceeding in the trial of the prosecution under a constitutional statute in which it is his duty to exercise a discretion and to act.

The authorities cited in the opinion do not justify the holding therein against the police judge. The Yick Wo and Gausepohl cases, the claimed authority for the majority opinion, did not involve judicial officers. The Purnell and City of Harrodsburg cases are not authority for the majority holding on this point although police judges were enjoined. In those cases

the judicial officer was enjoined from enforcing an invalid ordinance.

Appellees were prosecuted under KRS 436.160. The constitutionality of this statute had been upheld. Commonwealth v. Arlan's Department Store of Louisville, Ky., 357 S.W.2d 708; Arlan's Department Store of Louisville v. Commonwealth, Ky., 369 S.W.2d 9. Thus, the Purnell and City of Harrodsburg cases are unavailable despite the comment that there is no logical difference between those cases and this case. The difference is that in those cases prosecution was under an invalid law while here the prosecution was under a law which had been upheld as constitutional by this court. Appellees have not questioned the constitutionality of the statute, nor have they sought to appeal from the judgments entered against them in the police court.

The majority opinion would dismiss Cohen v. Webb, 175 Ky. 1, 192 S.W. 828, as being overruled, ostensibly by the Purnell, City of Harrodsburg, and Gausepohl cases. For the reasons pointed out, these cases are not justification for overruling Cohen v. Webb, which held that a criminal prosecution of a violation of a Sunday closing law could not be enjoined. Cohen v. Webb is squarely in point with the objection I seek to make to the majority opinion and is in accord with the rule as stated in Stephens v. McCreary County, 258 Ky. 516, 80 S.W.2d 592:

"It is a settled doctrine that a criminal prosecution cannot be enjoined unless property rights are involved and it is necessary for a court of equity to interfere in order to prevent a multiplicity of suits and consequent irreparable injury."

The Stephens case was decided after Gausepohl. See also United Steelworkers of America (AFL–CIO) v. Fuqua, 6 Cir., 253 F.2d 594.

In the Steelworkers case it was held that a labor union and its members could

not enjoin city officials from enforcing provisions of a city ordinance when the record did not establish that the union and its members had been threatened with any injury other than that incidental to every criminal proceeding brought lawfully and in good faith or that a federal court of equity, by withdrawing determination of guilt from state courts, could afford the union and its members any protection which they could not secure by prompt trial and appeal pursued to the Supreme Court. The police judge was not a party to the proceeding. The opinion was written by Justice Stewart, then sitting on the Circuit Court of Appeals. The Steelworkers holding is adverse to the majority opinion.

In Strand Amusement Company v. City of Owensboro, 242 Ky. 772, 47 S.W.2d 710, and Gastineau v. Bradley, Ky., 249 S.W.2d 529, sought to be distinguished in the majority opinion, it was held that an accused who has violated a valid statute has no standing in equity to come into court with unclean hands and obtain relief against prosecution. The Strand Amusement Company case involved a violation of a Sunday closing law and was cited with approval in the Gastineau case.

The majority opinion seems to say that as a matter of policy it is better to give relief to a violator with unclean hands than to uphold the hands of the appellants in law enforcement because all of the violators are not prosecuted. There is no question as to the guilt of the appellees. To state a parallel situation, the one rat caught in the trap, under the authority of the majority opinion here, could justifiably claim freedom because no others had been caught. Such reasoning cannot be justified.

This opinion is far-reaching. It is put within the power of every accused to say that he has been discriminated against when he is arrested. One possible effect is to outlaw on the basis of discrimination a conviction against an accused wherein an accomplice has testified. This decision places another stumbling block in the rocky road to law enforcement.

For these reasons I respectfully dissent.