William "Bill" OTTO et al., Appellants,

v.

Samuel KOSOFSKY and Robert A. Stith, Appellees.

CITY OF NEWPORT, Kentucky, Appellant,

v.

Samuel KOSOFSKY and Robert A. Stith, Appellees.

Court of Appeals of Kentucky.

Nov. 5, 1971.

Rehearing Denied March 17, 1972.

Donald L. Johnson, Kaufmann, Jolly, Johnson & Blau, Morris Weintraub, Lawrence Riedinger, Jr., Newport, for appellants.

William J. Deupree, Jr., James F. Ogden, Covington, for appellees.

VANCE, Commissioner.

This is an appeal from a judgment which held the "Bingo Licensing Act" unconstitutional. The "Bingo Licensing Act," hereinafter referred to as the Act, was enacted as Chapter 60 of the Acts of the General Assembly of the Commonwealth of Kentucky, 1970, and is now codified as Chapter 238 of the Kentucky Revised Statutes.

The Act provides that cities in counties having a population of 75,000 or more persons may license certain civic, charitable, fraternal, religious and veterans organizations to operate bingo games with the net proceeds of the games to be donated to educational, charitable, patriotic or religious uses.

Bingo is defined in the Act as a game played for prizes with cards bearing numbers or other designations, five or more in one line, the holder covering numbers as objects similarly numbered are drawn from a receptacle and the game being won by the person or persons who first cover a previously designated arrangement of numbers on such a card, and wherein the cards or tickets or rights to participate in such games are made available strictly on a voluntary donative basis and no cash payment or other consideration is required as a prerequisite to participate. The Act further provides that it shall remain inoperative unless or until it is adopted by the legal voters of any city to which it is applicable.

The city council of the city of Newport, Kentucky, (a city within a county containing more than 75,000 persons) passed a resolution calling a special election to obtain the sense of the voters concerning the adoption of the Act. Appellee, Kosofsky, instituted this action as a citizen and taxpayer seeking to have the Act declared invalid and seeking an injunction to prohibit the city of Newport from expending public funds in the conduct of the special election. The County Court Clerk of Campbell County, the members of the Election Commission and the City of Newport were named defendants.

The appellant, Otto, was permitted to intervene on behalf of a class of persons interested in legalized bingo on the ground that the named defendants would not adequately represent the position of intervener. Appellant, Otto, denied the allegations of the complaint and asked for a declaration of the validity of Chapter 238 of the Kentucky Revised Statutes. The court declined

to enjoin the election but required the intervener, Otto, to post a $6,000.00 bond to guarantee payment of the costs of the election. The election was held and its costs were defrayed from the bond posted by Otto. The voters adopted the provisions of the Act.

After the adoption of the Act by the voters, appellee, Kosofsky, amended his complaint and appellee, Stith, was permitted to file an intervening complaint in which it was alleged that any expenditure of city funds in the administration of licensing bingo would constitute illegal expenditure.

The appellees claimed the Act violates the provisions of Sections 3, 59, 60 and 226 of the Kentucky Constitution. The trial court upheld the appellees' contention with respect to Section 226 of the Constitution and did not pass upon the other alleged constitutional objections.

Judgment was entered which declared the Act unconstitutional, enjoined expenditure by the city of public funds in administering the Act, invalidated any licenses which had been issued prior to the judgment and enjoined the Commissioner of Revenue from promulgating regulations pursuant to the authority of the Act. We affirm the judgment.

The first attack upon the judgment is that the appellees had no standing to maintain the suit, and in the alternative, that the issue became moot and presented no justiciable controversy.

The defensive pleadings in this litigation consisted of allegations that the complaint, the amended complaint and intervening complaint failed to state a claim for relief, a general denial and an affirmative request that the validity of the Act be declared. Nowhere was *standing to sue* challenged or brought to the attention of the trial court.

The claim that the issue became moot was likewise not raised in the trial court. It is based upon the theory that this litigation was instituted as a taxpayers' suit

to enjoin the expenditure of public funds in holding a special election. It is argued that the matter became moot when the cost of the election was defrayed from monies posted by intervener, Otto, and in fact no public money was expended. This argument overlooks the allegations and proof that some public funds would necessarily be expended in the administration of the Act.

■ Under KRS 418.065 courts may decline to give declaratory judgments in a number of instances. Without deciding whether the court properly could have declined to enter a declaratory judgment in this case, we hold that the undertaking to make a declaration of rights was not an abuse of the court's discretion. An important public question is here presented and all parties joined in asking that the validity of the Act be determined. Having asked for the declaration, the appellants are in no position to complain that one was given.

Section 226 of the Constitution of·Kentucky provides:

"Lotteries and gift enterprises are forbidden, and no privileges shall be granted for such purposes, and none shall be exercised, and no schemes for similar purposes shall be allowed. The General Assembly shall enforce this section by proper penalties. All lottery privileges or charters heretofore granted are revoked."

The appellant, Otto, contends that the Act is not violative of Section 226 because bingo, although admittedly a form of gambling, is not a lottery within the meaning of the constitutional provision. Reliance is placed upon Commonwealth v. Kentucky Jockey Club, 238 Ky. 739, 38 S.W. 2d 987 (1931); Greater Loretta Imp. Ass'n v. State ex rel. Boone, Fla., 234 So.2d 665 (1970) and Bender v. Arundel Arena, Inc., 248 Md. 181, 236 A.2d 7 (1967).

*Kentucky Jockey Club* held pari-mutuel betting at race tracks to be a form of gambling not prohibited by Section 226 of the Constitution. In that case the court

referred to the debates of the constitutional convention which adopted our present constitution. In those debates the question of whether pooling privileges at race tracks should be prohibited by the constitution was discussed and the delegates clearly indicated an intention that race track pooling was not to be prohibited by the constitutional provision against lotteries. In *Kentucky Jockey Club* the court gave effect to the intention expressed by the drafters of the constitution.

In *Greater Loretta Improvement Association,* the Florida Court held that bingo was not prohibited by the Florida Constitution. In 1968, Florida adopted a constitution containing this provision:

> " 'Lotteries, *other than the types of parimutuel pools authorized by law as of the effective date of this constitution,* are hereby prohibited in this state.' " (Emphasis ours.)

In 1967 a statute was enacted in Florida legalizing bingo. The statute was in effect at the time the Florida Constitution was adopted and in construing the statute the Florida Court concluded that bingo was a lottery but held it to be within the class of lotteries which were authorized as of the effective date of the constitution and therefore excluded from the prohibition of the constitution.

In Maryland the constitutional provision against lotteries was as follows:

> " ' * * * No lottery grant shall ever hereafter be authorized by the General Assembly.' "

In construing this section of the constitution the Maryland Court held in *Bender* that the constitutional provision referred to lotteries granted or enfranchised by the state.

Although some language in *Kentucky Jockey Club* indicated that the intent of Section 226 of the Kentucky Constitution was to prohibit state lotteries, the decision actually rested upon the intention expressed by the drafters of the constitution.

Florida and Maryland, in upholding statutes which legalized bingo, simply excluded from the constitutional prohibition against lotteries a form of gambling which was shown by the legislative and judicial history of those states to be excluded from the prohibition of the constitution. In *Kentucky Jockey Club* this court recognized the same principle and followed the same course as to pari-mutuel betting. The attempt to include bingo within this same principle must fail because there is nothing in our judicial or legislative history to support a construction that bingo is not a form of lottery or that it was not intended to be prohibited by Section 226 of the Constitution.

■ A lottery is a scheme for the distribution of prizes or things of value purely by lot or chance among persons who have paid or agreed to pay a consideration for the chance to share in the distribution. Commonwealth v. Malco-Memphis Theatres, 293 Ky. 531, 169 S.W.2d 596 (1943). Bingo is obviously such a scheme. It was so recognized by this court in A. B. Long Music Company v. Commonwealth, Ky., 429 S.W.2d 391 (1968), in which this court said:

> " * * * The word 'lottery' is a generic term and embraces all schemes for distribution of prizes by chance for consideration, including *bingo*. * * *." (Emphasis ours.)

■ The General Assembly tacitly recognized the fact that bingo is a lottery when it provided in Section 49(2) of the Act as follows:

> "Any bingo game not conducted under the provisions of this Act shall be a lottery and shall be considered in violation of KRS Chapter 436."

The Act thus embodies a legislative recognition that bingo is a lottery and constitutes

**630**

a legislative attempt to legalize a form of lottery in the special circumstances provided in the Act.

We cannot consider here the purpose for which the Act was adopted or whether good or bad would result from it. The plain fact is that our constitution forbids all lotteries and gift enterprises. This prohibition can be repealed by a constitutional amendment but not by a legislative enactment.

The judgment is affirmed.

MILLIKEN, C. J., and PALMORE, OSBORNE, STEINFELD, REED and NEIKIRK, JJ., concur.

EDWARD P. HILL, Jr., J., dissents.

OSBORNE, Judge (concurring).

I concur in the majority opinion. I am of the opinion that pari-mutuel pools also constitute a lottery in violation of Section 226 of the Constitution of Kentucky, Commonwealth v. Kentucky Jockey Club, 238 Ky. 739, 38 S.W.2d 987 (1931), notwithstanding.

EDWARD P. HILL, Jr., Judge (dissenting).

For these reasons I respectfully dissent from the majority in this case. I agree with the majority that bingo violates Section 226 of our Constitution. By the same token, I think pari-mutuel betting on horse races also violates the same section of the Constitution. Both constitute lotteries. In view of the millions of dollars invested in the racing business since Commonwealth v. Kentucky Jockey Club, 238 Ky. 739, 38 S.W.2d 987 (1931), was decided, I would invoke the rule of stare decisis and let stand *Kentucky Jockey Club*, supra. However, I would follow City of Ashland v. Heck's, Inc., Ky., 407 S.W.2d 421 (1966), and refuse to interfere with bingo. Any other course to me amounts to judicial dishonesty.